UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY PUCKETT,

        Plaintiff,

v.

T. HUIZING, *et al.*,

        Defendants.
                               /

Case No. 1:07-cv-1274

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant Troy Huizing (docket no. 71).

    **I.**    **Background**

The court set forth the background to this action in a previous Report and Recommendation:

> Plaintiff's claims arise from an incident that occurred on January 13, 2007, while he was incarcerated at the Ionia maximum security correctional facility. Plaintiff sets forth the following allegations in his complaint. When defendant Huizing picked up plaintiff's meal tray, plaintiff "placed both arms out of the food slot preventing Officer T. Huizing from closing the foodslot door." Compl. at p. 2.[1] Huizing unlatched the cell door and called for the officer working the panel to open it. The panel officer attempted to open the door two or three times, but it would not open. When the door would not open, Huizing grabbed plaintiff's left hand, started bending and twisting his pinky finger, told plaintiff that he was "going to break your f****** fingers," and slammed both of plaintiff's hands into the food slot. Defendant Gregory heard a commotion and responded. Gregory grabbed plaintiff's

---

[1] Plaintiff was found guilty of a major misconduct of threatening behavior, based upon holding open the food slot and swinging his arm out of the slot in an attempt to strike Huizing. *See* Major Misconduct Report (Jan. 30, 2007) attached to Compl.

right hand, twisted his pinky finger, slammed his hand against the food slot and told plaintiff, "we are going to break your fingers." Finally, plaintiff alleges that defendant Eastman knew that there was no reason to open plaintiff's cell door, but proceeded to open it two or three times upon Huizing's request. Comp. at pp. 2-3. Plaintiff seeks compensatory damages of $20,000.00 from defendant Huizing, $20,000 from defendant Gregory, $10,000.00 from defendant Eastman, and $50,000.00 for his pain and suffering. *Id.* at p. 4.

Report and Recommendation at 1-2 (docket no. 34).

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

2

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Discussion

The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6. Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321. As the Sixth Circuit summarized in *Moore*, 2 F.3d at 700, "To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury."

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the

3

very purpose of causing harm." *Id.* at 9,10 (citations omitted). While an Eighth Amendment claim need not include a "significant injury," a *de minimis* use of physical force will not support such a claim unless the force used is "of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. *See also*, *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004) ("the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind'"); *Moore*, 2 F.3d at 700-01.

### A. Defendant Huizing

As an initial matter, plaintiff admits that he purposely placed both of his arms outside of the food slot, to prevent defendant Huizing from closing it. Compl. at p.2. In his supporting affidavit, defendant Huizing stated that on January 13, 2007, he was assigned as the Unit 1 A-wing Gallery Officer at the Ionia Maximum Correctional Facility ("IMAX"). Huizing Aff. at ¶ 4 (docket no. 72-3). At approximately 1657 hours, Huizing attempted to retrieve plaintiff's food tray when plaintiff "swung his arm out of the cell door food slot" attempting to hit Huizing. *Id.* at ¶ 5. Plaintiff missed Huizing "but did hit his cell door." *Id.* Shortly thereafter, Officer Gregory spoke to plaintiff, who removed his arm from the food slot. *Id.* at ¶ 6. Gregory then secured the food slot. *Id.* at ¶ 6. Huizing denied stating that he was going to break plaintiff's fingers, nor did he bend, twist or slam plaintiff's fingers or hands in the food slot. *Id.* at ¶ 7. Finally, Huizing did not hear Officer Gregory state that he was going to break plaintiff's fingers or did he observe Gregory bending, twisting or slamming plaintiff's fingers or hands in the food slot. *Id.* at ¶ 8.

Officer Huizing's affidavit establishes that he neither threatened nor injured plaintiff. Plaintiff's response did not include an affidavit, or any other evidence, rebutting Officer Huizing's account. The court notes that plaintiff did file an affidavit in his objection to the undersigned's first

4

Report and Recommendation, which addressed a motion for summary judgment filed by two co-defendants. *See* Puckett Aff. (Jan. 27, 2009) (docket no. 41). In this affidavit, plaintiff stated that Officer Huizing had plaintiff's cell door opened, and giving himself "a running start" at the cell, made the following "verbal threat": "I am coming into your cell to f*** you up." *Id.* Then, Officer Huizing grabbed plaintiff's left hand "and began bending and twisting my pinkie finger and slamming my hand in the steel food slot." *Id.* In the order adopting the report and recommendation, the court observed that plaintiff offered no reason for his failure to include the affidavit in the summary judgment record available to the Magistrate Judge and further stated that even if plaintiff had submitted the January 27, 2009 affidavit in a timely manner, it would not have precluded summary judgment on an alternative ground, i.e., plaintiff suffered only *de minimis* injuries. *See* Report and Recommendation (docket no. 34); Order and Judgment (docket no. 46).[2]

Although plaintiff's January 27, 2009 affidavit was not filed in response to the present motion for summary judgment, but rather in response to a previous motion, the affidavit is arguably part of the record in this action and should be considered to determine whether there is a genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c)(2). This affidavit rebuts the facts

---

[2]Plaintiff filed a similar "affidavit" when he appealed a court order to the Sixth Circuit Court of Appeals. *See* Puckett Aff. (Feb. 15, 2007) (docket no. 67). The court notes that this affidavit (dated February 15, 2007) was signed before plaintiff filed this action. The Sixth Circuit dismissed plaintiff's appeal as improperly filed. *Puckett v. Huizing,* No. 09-1509 (Order) (6th Cir. June 5, 2009). While the February 15, 2007 "affidavit" was signed by a notary, it did not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz,* No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930), quoting *Clarke v. Wayne Circuit Judge*, 193 Mich. 33; 159 NW 387 (1916) (syllabus).

as set forth in defendant Huizing's affidavit, and establishes a genuine issue of fact as to whether Huizing grabbed and twisted plaintiff's hand and finger.

### B. *De minimis* use of force

Nevertheless, it is not a material issue since plaintiff fails to show that he suffered anything more than *de minimis* injuries. As the undersigned explained in the previous Report and Recommendation:

> Finally, even if plaintiff's allegations were true, he was subject to only a *de minimis* use of force that was insufficient to support this constitutional claim. The medical records reflect that plaintiff was taken to the Ionia County Memorial Hospital (ICMH) emergency room on January 13th for a possible dislocation of his bilateral pinky fingers. MDOC Emergency Room record (1/13/07) attached to Compl. The hospital records indicate that plaintiff's hands were swollen, that he had abrasions on his right and left pinky fingers, that he complained of mild to moderate pain, that he was reportedly unable to flex the pinky fingers of either hand, and that his fingers were "crushed" by being "slammed" in the food slot. *Id.*; ICMH Medical Records, attached as Exh. C to defendants' brief. However, plaintiff's x-rays were normal and he was told to ice both hands and take Tylenol. *Id.* The next day, an MDOC nurse examined plaintiff, noting that he had several scratches to the tops of both hands, slight bruising, and no swelling. MDOC Progress Notes (1/14/07) attached to Compl. The nurse also found that plaintiff was able to move his hands within normal limits. *Id.*
>
> In his response, plaintiff asserts that his pinky fingers are now "permanently facing in an outward position because of the excessive force used." Plaintiff's Response at 6 (emphasis omitted). However, he has failed to present any evidence to support this assertion. On the contrary, none of the medical records suggest that his fingers were contorted or damaged to this extent, and his x-rays were normal. *See* ICMH Medical records. In this regard, plaintiff's story about his fingers is certainly contradicted by the medical record. *See Scott v. Harris, supra.*
>
> The record in this case establishes that plaintiff merely suffered some abrasions and bruises on his pinky fingers, that were treated with ice and Tylenol. While the Eighth Amendment does not require a serious injury, plaintiff's minor injuries establish nothing more than a *de minimis* injury. *See Jones Bey v. Johnson*, 248 Fed. Appx. 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment); *Corsetti v. Tessmer*, 41 Fed. Appx. 753, 755-56 (6th Cir. 2002) (small bruises and minor cuts on the shoulder found to be *de minimis* injuries under the

6

> Eighth Amendment). Plaintiff's claims of "injury" arising from his own misbehavior only serve to trivialize the constitution. Accordingly, defendants are entitled to summary judgment on this basis. *Id.*; *Hudson*, 503 U.S. at 9-10.

Report and Recommendation at 6-7 (docket no. 34).

Plaintiff has not submitted any new evidence that would affect the court's resolution of this issue. Accordingly, defendant Huizing is entitled to summary judgment on this basis.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Troy Huizing's motion for summary judgment (docket no. 71) be **GRANTED** and that this action be dismissed.


Dated: January 19, 2010                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).